CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY

**IN THE UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY**
**CAMDEN COURTHOUSE**

2015 JUL 28  A 9: 43

| | | |
|---|---|---|
| MICHAEL OSEI | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | CIVIL NO. ----------------- |
| | : | |
| UNIVERSITY OF MARYLAND | | |
| UNIVERSITY COLLEGE ("UMUC") | : | |
| | | |
| The OFFICE of FINANCIAL AID, | : | |
| UMUC; | | |
| | : | |
| JAVIER MIYARES, | | |
| Individually, and in his official capacity | : | |
| as President of UMUC; | | |
| | : | |
| JULIE LINDENMEIER, | | |
| Individually and in her official | : | |
| capacity as then-Assistant Vice President | | |
| of Financial Aid Compliance, UMUC; | : | |
| | | |
| CLAIRBOURNE W. PATTY, | | |
| Individually and in her official capacity as | : | |
| Student Code Administrator and | | |
| Director, Student Resolution and Judicial | : | |
| Affairs, Office of the Registrar, UMUC; | | |
| | | |
| TERRENCE COOPER, | : | |
| individually and his official capacity as | | |
| Academic Specialist III | | |
| Information and Technology Systems, | | |
| The Graduate School, UMUC | : | |
| | | |
| LYNETTE O'LEARY, | : | |
| Individually and in her official capacity as | | |
| Assistant Director, the Office of Student | | |
| Financial Aid | : | |
| UMUC: | | |
| | : | |
| *Defendants* | : | |

# Plaintiff's Complaint For

**Immediate Special INJUNCTION *Pendente Lite* And/or TRO & *Ultra Vires*
INJUNCTION Against Unconstitutional Hearing, Sanctions, And STAY, VACATE , &
SET ASIDE all alleged Proceedings, external Reports, and Sanctions before and After
July 28, 2015 10:00 a.m.; Against alleged Unconstitutional, Retaliatory, Discriminatory,
Expulsion defendants Lack Statutory Jurisdiction to Adjudicate.**

Plaintiff Michael Osei, proceeding *pro se* by way of this Complaint against Defendant University of Maryland University College and the other above-named Defendants, states as follows:

## PARTIES & ADDRESSES

1.   Plaintiff, MICHAEL OSEI ("OSEI") is an adult black male Citizen of the Commonwealth of Pennsylvania and Citizen of the United States. Plaintiff Osei maintains an address at: 3016 North Broad Street, Philadelphia, Pennsylvania 19132.

2.   Defendant, UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE ("UMUC") is being sued as a Public, State University in Maryland, State-related institution of the Maryland Higher Education Commission (MHEC); instrumentality of the State of Maryland; receives its funding from both State and Federal sources, and runs many online and distance education degree and non-degree programs. *See* website, http://www.umuc.edu/visitors/about/; *See* also, http://msa.maryland.gov/msa/mdmanual/25univ/umuc/html/umuc.html. UMUC is inarguably held as a State- actor, *Smith v. University of Maryland University* College, No. 8:2010cv01687 - (D. Md. 2011), not entitled to assert sovereign immunity, and has been held as a "state actor" for purposes of Section 1983. UMUC maintains an office address at: 3501 University Boulevard East, Adelphi, Maryland 20783-8000.

3.   Defendant, OFFICE OF STUDENT FINANCIAL AID, UMUC ("OSFA") is an entity or public financial instrumentality that has contracted with the U.S. Department of Education under the Title IV of the Higher Education Act of 1965 ("HEA") that is delegated to the Secretary of Education--not UMUC-- the power to enforce Title IV and regulations promulgated pursuant to it in compliance to all HEA, federal, state and other Common Law regulations to administer direct and indirect federal student financial aid to UMUC

*Plaintiff's complaint*

students, as well as from private –owned scholarships, fellowships, and grants from

UMUC. The OSFA is being sued separately and/or together with the UMUC; receives its

funding from both state and federal sources; is therefore not entitled to assert sovereign

immunity and has been held as a "state actor" for purposes of Section 1983. The OSFA

maintains an office address at: Office of Student Financial Aid, 3501 University

Boulevard East, Adelphi, Maryland 20783-8000.

4.      Defendant JAVIER MIYARES (or "Miyares" or "def. Miyares") is an adult Caucasian

male Citizen of the State of Maryland and Citizen of the United States and being sued

individually and in his official capacity as President of UMUC. He maintains an office as:

3501 University Blvd. East, Adelphi, MD 20783, USA.

5.      Defendant JULIE LINDENMEIER ("def. Lindenmeier" or "Lindenmeier") is an adult

Caucasian female Citizen of the State of Maryland and Citizen of the United States and is

being sued individually and in her official capacity as *then*-Assistant Vice President of

Financial Aid Compliance, UMUC. She maintains an office at: 3501 University Blvd.

East, Adelphi, MD 20783, USA.

6.      Defendant CLAIRBOURNE W. PATTY (def. Patty or "Patty") is an adult Caucasian female

Citizen of the United States and Citizen of Maryland and is being sued individually and in her

official capacity as Student Code Administrator, Director, Student Resolution and Judicial

Affairs, Office of the Registrar, UMUC. She maintains an office at: 3501 University Blvd. East,

Adelphi, MD 20783, USA.

7.      Defendant, TERRENCE COOPER ("def. Cooper or Cooper) is an adult Caucasian male Citizen

of the United States and Citizen of Maryland and is being sued individually and in his official

capacity as Academic Specialist III, Information and Technology Systems, The Graduate School, UMUC. He maintains an office at: 3501 University Blvd. East, Adelphi, MD 20783, USA.

8.    Defendant, LYNETTE O'LEARY, is an adult female Caucasian Citizen of the United States and Citizen of Maryland and is being sued individually and in her official capacity as Assistant Director, the Office of Student Financial Aid, UMUC. She maintains an office at: 3501 University Blvd. East, Adelphi, MD 20783, USA.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 in that plaintiff has brought the instant civil action pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, and the Fourth and Fourteenth Amendments to the United States Constitution and other federal questions. This Court exercises supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10.   Venue lies in the United States District Court for District of New Jersey because there is Diversity of Citizenship pursuant to 28 U.S. Code § 1332. & 28 U.S.C. §1407 multidistrict litigation whereas the Citizenships of the State parties are Pennsylvania and Maryland; thus, this federal Court can also apply its choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## STATEMENT OF FACTS / FACTUAL ALLEGATIONS

11.   Plaintiff Michael Osei ("Osei") is originally from the Republic of Ghana in West Africa; Osei's first language is Ghana Twi of the Akan (Asante) tribe and Osei is black by race.

12.   In 2003, after years of struggle to obtain the necessary visa from government officials in

Ghana, Osei immigrated by himself with nobody and to nobody to the United States for the express purpose of furthering his education.

13. Osei became a Citizen of the United States and Citizen of the Commonwealth of Pennsylvania.

14. Osei acquired sufficient proficiency in the English language to successfully pursue course work in classes conducted in English, and graduated in 2006 with a Bachelor of Science in Biology and a Graduate Certificate in Pharmaceutical Drug Development in spring 2007 in the USA.

15. In the Fall 2014, Osei applied for admission and was accepted and matriculated by defendant UMUC to pursue courses towards a degree for Master of Science in Biotechnology with specialty in Bioinformatics (the "program," "Biotech program," or "Biotechnology") which is mostly an online program.

16. In the Fall 2014 semester, Osei received federal student aid and enrolled in two (2) graduate classes namely: BIOT 640—Societal Issues in Biotechnology and earned a final grade of "A"; and "BIOT 630" -- Introduction to Bioinformatics which he obtained an *Incomplete* ("I") final grade that automatically turned into a Fail ("F") because of misinformation on the part of UMUC over the deadline regarding that Incomplete grade and later the "F" grade was changed to a "B" final passing grade after the discrepancy was resolved in July 2015 thereby creating an *erroneous gap* in Osei's continued education for the Summer 2015 term because def. Cooper forcibly dropped Osei's Summer 2015 classes against Osei's authorization pending the discrepancy.

17. In the Spring 2015 semester, Osei enrolled in two (2) other graduate classes namely: BIOT 645-The Business of Biotechnology, and BIOT 643--Techniques of Biotechnology and

*Plaintiff's complaint*

Osei earned final passing grades "B" for both classes. Osei was eligible and received

federal student.

18.    Defendant UMUC has published academic plan for the MS degree Biotech—

Bioinformatics program that "All core courses with the BIOT- designator be completed

before starting any specialization [courses]" *see* http://www.umuc.edu/academic-

programs/masters-degrees/biotechnology-with-bioinformatics-specialization.cfm for "Core

Rules."

19.    In the Summer 2014 semester, although Osei enrolled in two (2) graduate classes namely:

PMAN 634 --Foundations of Project Management; and BIFS 613--Statistical Processes for

Biotechnology, the classes were forcibly dropped by defendant Cooper given a discrepancy

related to misinformation on the part of UMUC faculty, staff, and advisers with the prior

Fall 2014 BIOT 630 class. As such, an irreparable erroneous gap was created in Osei's

continued enrollment for the entire Summer 2015 term after the discrepancy was later

resolved by the UMUC in July 2015 AND SO Osei was not enrolled in any classes for the

Summer 2015 semester.

20.    By email (dated Wed, Apr 1, 2015 at 4:04 PM), alleged altered documents were allegedly

submitted for Osei to def. Lindenmeier of the OSFA in support of a budget increase request for

additional federal student financial aid given extenuating circumstances. By email (dated Mon,

Mar 30, 2015 at 10:54 AM), def. Lindenmeier informed Osei *inter alia* that "A decision will

typically be rendered in 10 business days after your completed appeal is received by the UMUC

Financial Aid Office. All appeal decisions are final. [Citing]

http://www.umuc.edu/students/aid/fapolicies/special-conditions.cfm

21.    While the status of the request was still undecided and was not received and the 10 days were

already far past, by email (dated Mon, Apr 20, 2015 at 2:56 PM), the alleged request for the

additional federal student aid funds was retracted voluntarily by Osei, cancelled by Osei, or withdrawn by Osei from defendants Lindenmeier and the OSFA even when no decision at all was made by def. Lindenmeier and the OSFA. Notably, the request was a) withdrawn *ab initio* and *ab arte* before any decision was ever made to approve or disprove, b) no money or funds were awarded or denied, c) no damage was caused, and d) no restitution needs to be made. *See* **Exhibit A.**

22.    Although the alleged request was already withdrawn and cancelled even before any decision at all was made, by email (dated Thu, May 14, 2015 at 4:58 PM), defendant Patty of UMUC notified Osei of student conduct violation for allegedly submitting false document to Ms. Lindenmeier of the OSFA. *See* **Exhibit B,** citing *inter alia*

"III.N. Intentional submission of false information to UMUC [or USM]" citing from the UMUC Student Code, *see* http://www.umuc.edu/policies/studentpolicies/stud15100.cfm

23.    By email (dated Wed, Jun 17, 2015 at 5:32 PM) to Osei, def. Patty attached a MEMO (**Exhibit. "C"**) wherein def. Lindenmeier *inter alia* reports Osei for submitting forged documents and recommends the disciplinary expulsion of Osei from UMUC.

24.    Whereupon given the preliminary mitigating factors of the code, by email dated (Fri, May 15, 2015 at 7:53 AM), Osei attempted to mitigate the matter to def. Patty that the complaint withdraw the complaint but to no avail. Osei attached the email cancelling the request but def. Patty later explained that although the Complainant—def. Lindenmeier has a right under the code to withdraw the complaint, def. Lindenmeier has refused to do so.

25.    Whereupon, by email (dated Wed, May 20, 2015 at 8:47 AM), Osei asked def. Patty to also dismiss the matter while contending that:

...under the Code, "the Administrator for the Student Code of Conduct will review referred materials to determine if there is sufficient information to warrant further Code proceedings. The Administrator for the Code may dismiss a referral if it is discovered (1) the complainant has failed to comply with procedure; and/or (2) there exists no evidence or documentation to support the alleged violations

Osei therefore pointed out to def. Patty:

> ...this matter is completely about a *withdrawn-request* of funds from the U.S. Department for Education, and so UMUC does not have jurisdiction. Indeed, UMUC is required by the federal government under the Title IV of the HEA to refer all such allegations to the Inspector General of the U.S. Department of Education and not handle it under UMUC code. See, http://www2.ed.gov/about/offices/list/oig/misused/srespons.html, etc.
>
> All school personnel are responsible for reporting fraud, waste, or abuse to the U.S. Department of Education, Office of Inspector General. You can make your report to the OIG Fraud Hotline. The regulations governing this responsibility can be found in the verification regulations under 34 CFR 668.16."
>
> Accordingly, it will be against my *due process* to adjudicate this matter under the UMUC code.
>
> 3. As a result of the initial inquiry, the Administrator may also elect to refer the involved parties to other University resources, including, but not limited to alternative dispute resolution options.
>
> Here, I respectfully request that a) you dismiss the complaint and suggest to the complainant to present it to the department of education for jurisdiction since they are the right forum for this, b) or please present your own alternative dispute resolution options.

Notably, both defs. Lindenmeier and Patty did not comply with procedure to transfer the matter to the right jurisdiction of the U.S. Department of Education's OIG because the controversy involved alleged Title IV of HEA which requires the proper procedure to transfer the complaint to the U.S. Department of Education instead.

26.    Osei emphasized to def. Patty that the alleged request to the OSFA had been withdrawn earlier by email (dated Mon, Apr 20, 2015 at 2:56 PM) even before any decision to grant or deny the request was made, therefore the matter should be considered as moot. *See* **Exhibit. D.** Def. Patty declined.

27.    Osei asked def. Patty to consider alternate non- adversarial resolutions because the request was already withdrawn. However, def. Patty declined.

28.    Later on, Osei engaged the services of an attorney, Mr. Joseph Lento, Esquire, of Philadelphia to attempt resolve of the matter and by email (dated Thu, Jul 2, 2015 at 3:49 PM), def. Patty notified Osei and gave Mr. Lento FERPA waiver.

29. Attorney Lento was connected to def. UMUC's legal representative Ms. Melanie Barr- Brooks who spoke with him by phone to attempt resolve.

30. Shortly thereafter, by email (dated Thu, Jul 16, 2015 at 10:24 AM), def. Patty informed Osei that "…a Hearing has been scheduled to resolve your Code of Student Conduct case. The Hearing is scheduled for: Tuesday, July 28, 2015, at 10 am EST…"

    (Note: a *"Title IV of the HEA case" which* belongs to the jurisdiction of the Secretary of Education and the OIG is not a *"Code of Student Conduct case"* because there is no private right of action by a student against a school or a School against a student under Title IV of HEA.)

31. Attorney Lento confirmed by email to Osei (dated Sun, Jul 19, 2015 at 8:29 PM) that a resolution could not be reached between him and Ms. Barr- Brooks.

32. To attempt exhausting further internal administrative remedies in the highest office under the code and the UMUC, by email (dated Tue, Jul 21, 2015 at 12:51 PM), Osei advised def. Patty that before he sues in federal court, he would like to know who the Provost named on the code's procedure is to approach about the situation. However, def. Patty ignored Osei's inquiry allegedly because Osei mentioned "Federal Court."

33. Whereupon, Osei sent email-memo (dated Tue, Jul 21, 2015 at 2:56 PM) to exhaust final administrative remedy to Provost Dr. Cini--who had earlier on properly resolved an error on Osei's BIOT 630 class grade to change it right from the "I" changed "F" to final "B" -- and to various other Provost designees to ensure he has exhausted internal remedies on his part before proceeding to federal court, copied to Attorney Lento, Ms. Barr- Brooks, the Complainant def. Lindenmeier, etc., as follows:

> Marie Cini <marie.cini@umuc.edu>, Maureen David <maureen.david@umuc.edu>, melanie.barr-brooks@umuc.edu, "SA Code of Conduct [US]" <sacoc@umuc.edu>, Claibourne Patty Claibourne.Patty@umuc.edu Joseph Lento <jlentoesq@gmail.com>,

Julie Lindenmeier julie.lindenmeier@umuc.edu

34.    Allegedly, after *ex-parte* communication with the Provost with prejudice, def. Patty then replied

to Osei by email (Tue, Jul 21, 2015 at 5:54 PM) *inter alia* the following:

> a) The Hearing, currently scheduled for Tuesday, July 28, 2015 at 10 am EST, will go forward.
> b) Ms. Julie Lindenmeier will not be participating in the Hearing; she is no longer employed at
>    UMUC, and therefore cannot serve as Complainant. I want you to understand, however, that
>    although Ms. Lindenmeier was serving as the Complainant, the Code of Student Conduct case was
>    being brought by the Office of Financial Aid, which needed a representative to explain the alleged
>    violation. Ms. Lynette O'Leary, Assistant Director in the Office of Financial Aid, will serve as the
>    Complainant going forward.

(Note, the def. OSFA governed by the Title IV of the HEA regulations requiring them to refer

the matter to OIG of the U.S. Department of Education, is adamantly using the student code

against Title IV regulations to refer such Title IV. Matters to the OIG instead.)

35.    By email (dated Thu, Jul 16, 2015 at 10:24 AM), defendant Patty notified Osei of the Student

conduct hearing on July 28, 2015.

36.    Despite Osei's objections on grounds of lack of jurisdiction in violation of his constitutional due

process which prevents the def. UMUC a from adjudicating a "Title IV of HEA matter" as a

student conduct code matter in spite of their contractual agreements with the U.S. Department of

Education, and mootness, etc., the UMUC

37.    Having exhausted all internal administrative remedies at UMUC against the alleged

unconstitutional hearing, the federal Courts are open to address the following causes of actions

and the jurisdictional issues against the def. UMUC in addition to other causes of actions.

(**NB**: Fed.R.Civ.P. 20(a)(2). Under Rule 20, "reasonably related claims" may be tried together.

*Saval v. BL Ltd.,* 710 F.2d 1027, 1031 (4th Cir.1983). *Because all counts are related, plaintiff*

*bring combined multiple counts to avoid repetitions*).

# COUNT I

### 1.  False or Fraudulent Claims

**(31 U.S.C. § 3729(a) (1) (A) (2009), formerly 31 U.S.C. § 3729(a)(1)(2006))**

### 2.  False Statements
**(31 U.S.C. § 3729(a)(1)(B) (2009), formerly 31 U.S.C. § 3729(a)(2)(2006))**

**Osei v. UMUC, MAYIRES**

3.  **NEGLIGENCE**
4.  **STATUTORY NEGLIGENCE**
5.  **ADMINISTRATIVE NEGLIGENCE**
6.  **Negligence of Duty & Gross Negligence**
7.  **Tortious Prosecution of Frivolous Claims of Fraudulent intentional submission or misrepresentation**
8.  **Wanton Disregard and Delay to Report**
9.  **Malfeasance, Nonfeasance**

**Osei v. All defendants (except Cooper)**

38.   Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

39.   The conduct of defendants, culpable conduct, negligent conduct, grossly negligent conduct, and administrative negligent conduct as set forth hereinabove constitutes conduct under color of law which deprived plaintiff of the equal protection of the laws, common law and torts, substantially wastes Osei's time, placed him under undue seizure, undue embarrassment

40.   Osei asserts his Constitutional Right to Remain Silent on the allegation defendants have brought against him.

41.   Plaintiff Osei is not bringing a private action under Title IV of HEA in this matter.

42.   Plaintiff provides the statute for which defendants are statutorily negligent, administratively negligent, and grossly negligent in compliance with as the Title IV of the Higher Education Act of 1965 ("HEA"), as amended, 20 U.S.C. §§ 1070 *et seq*. ("Title IV, HEA Programs").

43.   Defendants contracted with the U.S. Department of Education to participate and receive federal
      funding and administer them to students by signing a Program Participation Agreement ("PPA")
      agreement. The PPA agreement requires defendants' compliance to the Statute of Title IV of
      HEA regulations and it is instructive and controlling.

44.   In order to be eligible to receive federal funding under Title IV, defendants are required to
      adhere to a variety of regulations promulgated under the statute.

45.   Defendants entered into contractual PPA agreements with the Department of Education, each
      signed by the President of the UMUC Defendant Miyares, in which UMUC specifically agreed
      to abide by these Title IV regulations. Execution of these PPAs with the Department of
      Education was a condition precedent to UMUC's eligibility to receive federal funding under
      Title IV of the HEA.

46.   UMUC also certified each time it drew down federal grant monies that the funds were being
      expended in accordance with the conditions of the applicable PPAs.

47.   At all times material hereto, the U.S. Department of Education Office of Inspector General, Title
      34 Code of Federal Regulations [34 C.F.R.] §668.16(f) requires the following:

> ... schools to develop and apply "an adequate system to identify and resolve discrepancies
> in the information that the institution receives from different sources with respect to a
> student's application for financial aid." In determining whether the institution's system is
> adequate, the Secretary considers whether the institution obtains and reviews—(1) All
> student aid applications, need analysis documents, Statements of Educational Purpose,
> Statements of Registration Status, and eligibility notification documents presented by or on
> behalf of each applicant...

48.   After making such identification, the statutory agreement requires UMUC to report allegations
      like this one against Title IV fund recipients like the allegations they have against student-
      borrower Osei to the OIG and not handle it themselves and the OIG provides *Inspector
      General's Hotline* with *complaint form (see*
      http://www2.ed.gov/about/offices/list/oig/oighotline.pdf) which is

> "maintained to facilitate the reporting of allegations involving fraud, waste, abuse, misuse
> or mismanagement of US Department of Education (ED) program funds. This could

> include complaints concerning employees, fund recipients, educational institutions, contractors, collection agencies, or lending institutions."

49.   Under the statute, 34 CFR 668.16, a participating school is required to report fraud, waste, or abuse to the U.S. Department of Education, Office of Inspector General 20 U.S.C. § 1097 [Title IV, HEA. (**NB:** defendants cannot now report Osei to the OIG since this failure to do so is alleged under statutory negligence in this matter.)

50.   UMUC agreed that it would comply with these and other requirements in each PPA it executed.

51.   By signing the PPA agreement with the department, UMUC student conduct board (a tribunal) relinquished its jurisdiction over allegations pertaining to Title IV funds to comply with the statutory mandate to report Title IV related conduct to the OIG

52.   On the first page of the PPAs in a double-lined box is this decree that:

> **The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.**

53.   By signing the PPAs, defendant Mayires or any UMUC president who signed it certified that UMUC would comply with Title IV of the HEA's requirements. In the first enumerated paragraph of each PPA, all of the PPAs signed by def. Mayires on defendant UMUC'S behalf, states:

> The Institution understands and agrees that it is subject to and will comply with the program statutes and implementing regulations for institutional eligibility as set forth in 34 CFR Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 CFR Part 668.The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.

54.    Defendant Mayires also certified on behalf of UMUC in each PPA that:

> By entering into this Program Participation Agreement, the Institution agrees that:

       (1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;

55.     The statutory provisions described in the context of this matter required UMUC to have referred their Title IV allegation against Osei to the OIG because by signing the PPA and agreeing to comply to receive and process federal student loans, UMUC forfeited or abrogated its rights to prosecute students through their own student conduct hearings but the OIG when Title IV funds are involved with the alleged conduct.

56.     It is therefore an *ultra vires* act legal doctrine prosecuting Osei through the UMUC student conduct hearing or code thereby breaching the PPA agreement UMUC signed.

57.     It is therefore statutory, professional, administrative *duty of care* for UMUC to have referred the Title IV allegation to the OIG instead of handling it themselves.

58.     Defendants are therefore liable for statutory negligence because they made knowingly false statements, certifications, and claims regarding UMUC's compliance with Department of Education regulations and the terms of its PPAs. Meanwhile, UMUC is violating federal regulations by, among other things, prosecuting fund recipients like Osei through their own student conduct process instead of the OIG for their alleged retaliatory and discriminatory purposes.

59.     By using or attempting to use their student conduct process to prosecute Osei instead of the OIG, Defendants UMUC and Mayires knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l) (2009), formerly 31 U.S.C. § 3729(a)(1)(2006),

specifically, the claims for student loan and Pell Grant payments under the Title IV student financial assistance programs.

60. By using or attempting to use their student conduct process to prosecute Osei instead of the OIG, Defendants UMUC and Mayires knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, and/or to get the United States to pay or approve false or fraudulent claims, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(B) (2009), formerly 31 U.S.C. § 3729(a)(2)(2006).

61. At all times relevant herein when Osei informed the defendants that the OIG instead has jurisdiction, they never indicated to have reported or reported and this court should prevent them from reporting and rule that the hearings they plan to conduct violates their statutory agreement to report and therefore an *ultra vires act* that warrants an injunction against their hearing, any possible sanctions at all, and implementation of any sanction.

62. Since Defendants failed to report to the OIG as required, defendants should not be allowed by order of this Court to report nor continue with their unwarranted *ultra vires* student code hearings pertaining to Title IV allegations at UMUC which is rather pre-empted under their statutory and administrative agreement to report to the OIG.

63. *Assuming arguendo*, Osei is guilty of the allegation, UMUC should also be found guilty for their *contributory negligence* to report to the OIG and wanton disregard to report.

64. The Defendants, by not following the proper procedures and law, as officers, and supervisors, in the prosecution of Osei have committed the torts of malfeasance and/or misfeasance and/or nonfeasance.

65. Without incitement of prejudice of guilt, the chronology of their own alleged verification correspondence shows the following:

    a) The documents and request were submitted on April,1 2015

    b) The documents and request were cancelled voluntarily Monday, April 20, 2015 2:57 PM by Osei.

    c) The documents were only verified on Monday, April 20, 2015 4:09 PM (email by UMUC James Koebel) a few hours after Osei withdrew the request. NOTE: April 20, 2015 was far past the procedurally-published 10 days def. Lindenmeyer had indicated to get back to Osei on his request. http://www.umuc.edu/students/aid/fapolicies/special-conditions.cfm

    d) It was long in Fri, Jul 10, 2015 at 4:15 PM that def. O'Leary was verifying when it is already withdrawn and past the 10 days. Their verifications show an actual domestic fire occurred in 2005.

    **NB:** UMUC cannot prove that all the elements required to satisfy the program of intentionality is satisfied when their own evidence shows that the damage – a requisite element-- be done-- and in this case when the request was withdrawn before any decision at all could be made, damage was not done.

66.    When defendant O'Leary allegedly inquired on July 10, 2015 from external source to verify Osei's document in support of the request that was already cancelled in April 20, 2015 without any benefit or damage, she violated the anti- retaliation clause by intentionally looking for an avenue and grounds to retaliate and reason or pretext to continue with the malicious prosecutions and the ongoing discriminatory and retaliatory hearing because if any verification was to be done, it should have been done in the 10 days administrative rule, not in proximity or 4 months later on to have pretext to join as witness.

67.    The Defendants, as policy-makers, have failed to provide adequate policies, failed to follow their own rules and procedures for the equal protection of Osei in their verification procedures in a 10-day *timely fashion* according to their own administrative rules and have, thus committed the torts of malfeasance and/or misfeasance and/or nonfeasance and administrative negligence.

*Plaintiff's complaint*

68.    The defendants when they failed and/or refused to follow proper, well- established and adequate procedures in the investigation and prosecution of Osei, to include the statutory and policy requirements under the Title IV of HEA and under Pennsylvania and Maryland state law and policy directives, a resulting in rather unconstitutional discipline and *ultra vires* hearings, is administratively and statutorily negligent towards Osei's protected rights, as he has property rights in, *inter alia*, his contract of education and employment.

69.    The egregious statutory carelessness, recklessness, wanton disregard and failure to refer the allegation to OIG rather presents an alleged unsafe interaction and alleged interference with the OIG's interests for which defendants agreed you comply with at all times and Osei's continued education and therefore rather presents a huge risk that could have resulted in something worse of more criminal nature.

70.    As a direct and proximate result of the aforesaid negligence, gross negligence, negligence by *omissions* and *commissions*, carelessness, recklessness and/or negligent acts /or omissions of defendants, their agents, servants and /or employees, has caused plaintiff Michael Osei to suffer extensive damages, stigma, loss of enjoyment of life, substantial waste of time, stress, undue disruption of his academic focus and concentration on academics as herein before alleged and as more fully identified.

71.    WHEREFORE, plaintiff Michael Osei hereby demands judgment pursuant to 42
U.S.C. §§ 1983 and 1988 and other applicable federal and state statutes and applicable state common law against Defendants University of Maryland Universality College and the Office of Financial Aid and defendants Lindenmeier and Patty, jointly, severally and/or severally, in an amount in excess of $500,000, exclusive of interest and costs; a preliminary and permanent injunction against Defendants to prevent the unprocedural disciplinary proceedings further deprivation of Plaintiff's constitutional rights and the rights of other UMUC students; an award

of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such

other and further relief as the Court may deem just and equitable.

# COUNT II

**MICHAEL OSEI V. UMUC, OSFA, ALL DEFENDANTS (except def. Cooper)**

      a) **Section 1983 -- Violation of Due Process Clause--Procedural
         & Substantive Due Process --Lack Of Jurisdiction By Defs.
         To Conduct Hearing Over Title Iv Of Hea Matter**
      b) **Abuse Of Process;**
      c) **Procedural Unconscionability**
      d) **Undue Influence**

72.     Plaintiff incorporates herein by reference each and every one of the allegations contained in

        preceding paragraphs as though fully set forth at length herein.

73.     The conduct of Defendants, as set forth hereinabove, constitutes conduct under color of state

        law which deprives plaintiff of the due process and equal protection of the laws as secured

        by the Fifth and Fourteenth Amendments to the United States Constitution in the manner

        described in the following paragraphs.

74.     As a graduate student enrolled in a Master's degree program in Biotechnology at UMUC,

        Osei has a constitutionally-protected property interest derived from state law in his right to a

        public education, in his continued enrollment, and in his course work toward an expectation

        of the degree he seeks which will be negatively impacted by the threatened disciplinary

        proceedings and expulsion from the University and deprivation of later educational and

        employment opportunities all to Osei's detriment.

75.     As a graduate student enrolled in a Master's degree program in Biotechnology at UMUC

        and as a citizen of the Commonwealth of Pennsylvania, Osei has a constitutionally-

        protected liberty interest derived from state law, including Article I § 1 of the Pennsylvania

Constitution, in his good name, reputation, academic standing, honor and integrity which will be negatively impacted by the threatened disciplinary proceedings will result in the stigmatizing events of expulsion from the University and deprivation of later educational and employment opportunities.

76.     As a graduate student enrolled in a Master's degree program in Biotechnology at UMUC and as a Citizen, Osei has a constitutionally-protected property and/or liberty interest derived from state law, in his right to be on the campus of UMUC, a public university, and his right to freedom of association and travel within UMUC's campus, a geographical area open to the general public, especially all citizens and students who pay taxes to provide in part for UMUC's funding.

77.     For each of the above-stated reasons, Osei is entitled to the protections of the Due Process Clause of the Fourteenth Amendment to the United States Constitution in connection with the disciplinary proceedings and sanctions unilaterally scheduled by defendants which is likely to result in the recommended expulsion or other disciplinary punishments which would result in a deprivation or impairment of Osei's constitutionally-protected property and liberty interests.

78.     Defendants are denying Osei due process by formulating, implementing and applying policies and procedures which deprives Osei of the right to a fair hearing by an impartial and unbiased tribunal, thereby denying fundamental due process to their student, Osei because defendants Patty, UMUC and the OSFA do not have jurisdiction over the matter, case, or controversy, whereas the alleged conduct strictly involved a request for U.S. Department of Education funds-- not UMUC private funds, scholarships , grants, fellowships, etc.-- governed by the Title IV of the HEA for which both Osei and the defendants have no private right of action.

79.  In order for defendants to participate in Title IV of HEA programs, defendants signed a PPA agreement with the U.S. Department of Education to comply with all regulations and school responsibility which requires them to report HEA allegations of this nature to the OIG and so defendants are prosecuting an allegation for which their jurisdiction is statutorily pre-empted to do and therefore abuse of discretion and abusing a process.

80.  Defendants are forcing, unduly and prejudicially influencing Osei to undergo a disciplinary proceeding which denies him due process of law because:

   (a)  Osei has no right of confrontation with respect to his alleged accusers who allegedly retaliated and discriminated against him, in particular Defendant Lindenmeier who received the alleged false documents and who in particular corresponded with and interacted with Osei and who made the report to defendant Patty whereas by email (dated Tue, Jul 21, 2015 at 5:54 PM) defendant Patty informed Osei that, "Ms. Julie Lindenmeier will not be participating in the Hearing; she is no longer employed at UMUC, and therefore cannot serve as Complainant" who failed to attend the hearing; and

   b)  Def. UMUC has deviated from their PPA agreement in participating with the federal direct and indirect student funding program under Title IV of HEA which also provides for the hearing on such alleged false documents submitted for their funds all in effort to prejudice, retaliate and prevent Osei from his continued education even when UMUC lacks jurisdiction.

   c)  Osei is prejudicially subjected to the lack of jurisdiction of a Student Conduct Board which lacks independence and authority because it is dominated by members of the University Disciplinary Committee present throughout the hearing who oversee the Board members' exercise of their function and usurp the function of the Chair of the Board by making important procedural rulings.

   d)  Osei is being judged, by "invitation" of the Board, a procedure not authorized by the Student

*Plaintiff's complaint*

Code of Conduct;

e) he is being judged by an absent member complainant defendant Lindenmeier who not only had personal knowledge of Osei and of the antecedents and facts of Osei's case, but who also: displayed extreme animosity toward Osei and her actions are inextricably intertwined with this matter because def. Lindenmeier did the following:

   a. recommends Osei's expulsion, on the basis of alleged personal knowledge, proximate and temporal retaliations, and independent " surmise and conjecture";

   b. recommends Osei's expulsion for conduct for which Osei is being subjected to unconstitutional disciplinary proceedings, without offering testimony for which she would have been subject to cross-examination to support the commission of such conduct and the inextricable nature for which her alleged retaliations and discriminatory animus is intertwined with this matter thereby making it an unfair and highly prejudicial hearing;

   c. recommends Osei's expulsion for conduct clearly within the realm of mootness, professional judgement, and Title IV of HEA and over procedure for which she did not follow to begin whereas she did not verify any document until 20 days past receipt;

   d. recommends Osei's expulsion for conduct which violated no provision of the Student Code of Conduct or any other positive enactment for which UMUC and or the OFA have jurisdiction;

   e. Recommends Osei's expulsion for no conduct whereas the alleged request was also withdrawn with no benefit before any decision rendered at all on her part.

81. Defendants are abusing the Student Conduct Process by conducting a hearing they do not have statutory and constitutional jurisdiction under Title IV of HEA to conduct but the U.S.

Department of Education has Jurisdiction to do so.

82. Defendants are abusing the Student Conduct Process by conducting a hearing that is tainted with proximate and temporal retaliation and discrimination to accommodate their own prejudices and bad faith towards Osei because they know that the OIG could; not influence them

83. It is *procedurally-unconscionable* for defendants to exercise jurisdiction under Title IV of HEA to conduct a hearing that falls under the jurisdiction of the U.S. Department of Education only.

84. Defendants are abusing the Student Conduct Process by conducting a hearing they do not have jurisdiction to conduct.

85. Defendants are liable for *undue influence* insofar as they *know* or *should have known* that they do not have influence over the outcome of the OIG's decisions and so they have elected to use their own process at UMUC since they have full influence and have predetermined the outcome as recommended [albeit unconstitutional] expulsion.

86. The defendants when they failed and/or refused to follow proper, well- established and adequate procedures in the investigation and prosecution of Osei, to include the statutory and policy requirements under the Title IV of HEA and under Pennsylvania and Maryland state law and policy directives, resulting in a rather unconstitutional discipline and hearings, violated Osei's Fourteenth Amendment right to procedural due process, as he had property rights in, *inter alia*, his contract of education and employment and so the hearing and all proceedings pertaining to this matter should be stricken, quelled, and rejected out of hand.

87. As a direct and proximate result of Defendants' unlawful conduct as described herein, Osei will suffer and will continue to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Osei is entitled to preliminary and permanent injunctive relief as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable attorneys' fees.

88.    As a further direct and proximate result of Defendants' unlawful conduct as described herein, Osei will be deprived and is deprived of his constitutional rights and has otherwise sustained legal injury, including, but not limited to:

      (a)    the cost of tuition, student loans, and other costs and expenses associated with applying for and attending school; and

      (b)    lost wages in the form of future earnings, the value of lost future benefits (including, but not limited to, health, pension, profit sharing, and other earnings-type benefits) that Osei would have received had Osei not been unlawfully suspended and thereby deprived of future educational and professional opportunities

89.    As a further direct and proximate result of Defendants' unlawful conduct as described herein, Osei is being caused and was caused to suffer other, non-economic losses, all to Osei's great financial, psychological, and emotional detriment and loss, including, but not limited to, loss of:

      (a)    the diminished likelihood that he will be able to further his education, which has at all times has been his primarily objective; school program;

      (b)    the opportunity to study for higher doctorate degrees

      (c)    the honor and prestige of being a biotechnology professional;

      (d)    the future ability to return to Ghana and help its citizens as a trained professional and to participate in the economic development of

      (e)    the feeling of self-worth that comes with serving an important societal purpose, the health and welfare of others.

90.    As a further direct and proximate result of Defendants' unlawful conduct as described herein, Osei has been caused and will continue indefinitely into the future to be caused severe mental anguish, humiliation, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.

WHEREFORE, plaintiff Michael Osei hereby demands judgment pursuant to 42 U.S.C. §§ 1983 and 1988 and other applicable federal and state statutes and applicable state common law against Defendants University of Maryland Universality College and the Office of Financial Aid and defendants Lindenmeier and Patty, jointly, severally and/or severally, in an amount in excess of $ 200,000, exclusive of interest and costs; a preliminary and permanent injunction against Defendants to prevent the unprocedural disciplinary proceedings further deprivation of Plaintiff's constitutional rights and the rights of other UMUC students; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

# COUNT III
## MICHAEL OSEI V. ALL DEFENDANTS

**1) 42 U.S.C. § 1983 – Violation of First Amendment--Right To Petition Anti-Retaliation Clause**

**2) Violation of First Amendment Freedom of Expression**

**3) Violation of Anti-Retaliation Clause of Title IV of Higher Education Act**

**5) Violation of Whistleblower Anti-Retaliation & Failure To Post Notice Of Whistle Blowing Statute (Federal, Pa, Or Md Law)**

**4) 42 U.S.C. §1985(3) - Conspiracy to Deprive Civil Rights**

**6) 42 U.S.C. §1986 - Neglect To Prevent Conspiracy**

**7) Hostile Educational Environment**

91.    Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

*Plaintiff's complaint*

92.    The conduct of defendants, as set forth hereinabove, constitutes conduct under color of state

law which unlawfully abridged Osei's right to the First Amendment to the United States

Constitution, made applicable to the States by the Fourteenth Amendments to the United

States Constitution, in the manner described in the following paragraphs.

93.    Defendants further deprived Osei of his right to freedom of expression under the First

Amendment by discriminating against Osei on the basis of the points of view expressed in

the content of his protected speech. (Ex. E).

94.    Osei expressed his dissatisfaction and concerns with the manner his federal student financial

aid was allegedly mishandled and the practices of defendant Lindenmeier and the OSFA by

emails between February 26, 2014 and March 11,2014 and copied the University President

defendant Miyares on most of those emails including email (dated Thu, Mar 12, 2015 at

9:06 PM) and asked him to intervene in the matters but Osei was ignored or did not by

defendant Miyares and def. Lindenmeier took no action on the issues and concerns Osei

raised.

95.    By email(dated Thu, Mar 12, 2015 at 9:06 PM), Osei filed a complaint against defendants

Ms. Lindenmeier and the OSFA to the U.S. Department of Education and copied her on it

among other UMUC OSFA personnel. *See* **Exhibit E** - showing that Osei "voiced his

opinion" and "spoke his piece of mind" against alleged bad experiences of black members of

the OSFA staff, as well as perfunctory and discriminatory practices of def. Lindenmeier and

the OSFA, which is speech that clearly falls in the domains of protected speech.

96.    By email (dated Fri, Mar 27, 2015 at 5:06 PM), Osei informed def. Lindenmeier that he has

filed a formal complaint against her, UMUC and the OSFA in the U. S. Department of

Education and she should not retaliate.

97.    That Complaint # 15-16549 was handled by the U. S. Department of Education designate Mr.

Jorge Matos, Customer Engagement and Information Management, Institutional Review

Specialist, U. S. Department of Education, who contacted the UMUC, etc. and concluded his

review of those matters against defendants by email (dated Tue, May 19, 2015 at 10:53

AM).

98.     Defendant Lindenmeier exercised hostilities and stereotypes against Osei through that time

and declined all requests by Osei that was subject to professional judgment with alleged

disparate treatment.

99.     By email (dated Wed, Apr 1, 2015 at 4:04 PM) some documents were allegedly submitted to

Ms. Lindenmeier in support of a budget increase request for federal student financial aid for

Osei given extenuating circumstances.

100.    Despite a voluntary formal withdrawal of that request by email (dated Mon, Apr 20, 2015 at

2:56 PM), for which the request was voluntarily cancelled or withdrawn by student without

any decision made by Ms. Lindenmeier, defendant Lindenmeier made a report to defendant

Patty for student conduct violation for submitting alleged false documents in support of that

request whereas a) no damage was caused, b) no funds were received.

101.    Though that request was voluntarily cancelled by Osei and withdrawn by email (dated Thu,

May 14, 2015 at 4:58 PM), Osei was notified of conduct violation by UMUC for allegedly

submitting false documents to Ms. Lindenmeier.

102.    Defendant Patty violated Osei's first Amendment right when she neglected to prevent

retaliations and violated Osei's first Amendment right when by emails (dated Fri, May 22,

2015 at 6:53 AM; Wed, Jul 1, 2015 at 7:16 PM) Osei informed defendant Patty that the

complainant def. Lindenmeier is allegedly "acting in retaliation" and is motivated by such

retaliatory animus because Osei had filed a formal complaint against her to the U. S.

Department of Education.

103. Specifically by email (dated Mon, Jun 29, 2015 at 5:19 PM), Osei wrote to def. Patty:

> Ms. Patty,
>
> The reviewer should also note that in close proximity before this complaint was made against me by the complainant, I formally and recently exercised my right to seek redress of my grievances through the University executive cabinet and President's office against the complainant and actually formally filed an administrative complaint against her through the Department of Education.
>
> The complainant also allegedly created a *hostile educational environment* for me with stereotypes and alleged discriminatory animus with differential treatments. The complainant was advised against retaliations over this also under federal law and Civil Rights Discrimination Act, but it appears she seeks my down fall with vindictive expulsion-the highest sanction--at all cost and has somewhat *unduly influenced* the process to override all mitigating factors and dispute resolution options, and it reflects in her memo that she has already jumped to conclusions on her own whereas this is an *allegation* and she does not make the decisions but your office, etc....

104. When Defendant Patty essentially validated and/or approved of the retaliatory complaint of the Defendants and did not oppose or end it, violated Osei's First Amendment right to free speech when she did nothing against the retaliation but allegedly took sides with def. Lindenmeier since they are all UMUC officials who allegedly dislike to be complained against to external bodies. As such def. Patty recklessly and egregiously *neglected to prevent retaliation* and allowed the code process to go on despite Osei informing her that the allegation brought against him should be moot because the request was withdrawn before any decision could be made and no funds were awarded over that at all and therefore the defendant Lindenmeier is using that allegation as pretext to retaliate.

105. Defendants, all of them knowing well that Osei had recently, proximately, directly and temporal proximately complained against them and threatened to sue them in federal court, were motivated by a class-based discriminatory and retaliatory animus, conspired to deprive plaintiff Osei of the due process and equal protection of the laws and/or of the equal privileges and immunities under the laws and/or her other civil rights, and engaged in acts including seeking Osei's expulsion or other discipline from UMUC over his rather voluntarily withdrawn and moot request, in furtherance of the conspiracy, to support retaliation all of

which will result and has resulted and threatened injury to Osei's continued education under pretext of "student conduct violation" of fraudulent submission of misrepresentation against Osei which cannot be proved or provable whereas the alleged submission was also withdrawn without any damages.

106.  Defendants, all of them, had knowledge that the wrongs *conspired* to be done were about to be committed, had the power to prevent or resolve--because the code also provided that the complainant can withdraw the allegation and the code administrator can also withdraw the allegation on their own or to aid in preventing the commission of the same, and neglected or refused to do so, even though the wrongs which were committed could have been prevented by the exercise of reasonable diligence and are therefore liable for the alleged conspiracies.

107.  Defendants, are liable for whistle-blower retaliations because Osei also complained against their alleged malpractices to the U.S. Department of Education (Exs. E.1-E.2) and so the defendants when they improperly and retaliatorily-complained about Osei resulting in Osei's threatened disciplinary expulsion and hearings and the University, when they essentially validated the retaliatory complaint of the Defendants and did not oppose or end it, and the University acting on a retaliatory complaint of the Defendants, violated Osei's rights under the *whistle blower* statutes of Maryland and Pennsylvania and the federal statutes.

108.  When defendants allegedly failed to properly post the Whistle blower Notice as required by Maryland law, violated Osei's rights and deprived him and others of notice.

109.  As a direct and proximate result of Defendants' unlawful conduct as described herein, Osei will suffer, has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Osei is entitled to preliminary and permanent injunctive relief against defendants' upcoming alleged retaliatory disciplinary hearing as well as damages in an amount to be determined by the Court and reasonable costs

of this lawsuit, including reasonable attorneys' fees.

110. As a further direct and proximate result of Defendants' unlawful conduct as described herein, Osei is and will be deprived of his constitutional rights and otherwise sustained legal injury, including, but not limited to:

    (a)    the cost of tuition, student loans, and other costs and expenses associated with applying for and attending school; and

    (b)    lost wages in the form of future earnings, the value of lost future benefits (including, but not limited to, health, pension, profit sharing, and other earnings-type benefits) that Osei would have received had Osei not been unlawfully suspended and thereby deprived of future educational and professional opportunities.

    (a)    As a further direct and proximate result of Defendants' unlawful conduct as described herein, Osei was caused to suffer other, non-economic losses, all to Osei's great financial, psychological, and emotional detriment and loss.

111. As a further direct and proximate result of Defendants' unlawful conduct as described herein, Osei has been caused and will continue indefinitely into the future to be caused severe mental anguish, humiliation, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.

    WHEREFORE, plaintiff Michael Osei hereby demands judgment pursuant to 42 U.S.C. §§ 1983 and 1988 and other applicable federal and state statutes and applicable state common law against Defendants, jointly, severally and/or severally, in an amount in excess of $150,000, exclusive of interest and costs; an immediate preliminary and permanent injunction against Defendants to prevent further deprivation of Plaintiff's constitutional rights and the rights of other UMUC students; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just

and equitable.

# COUNT IV

### MICHAEL OSEI V. UMUC, OSFA

**42 U.S.C. §1981 –**

1. **Discrimination On The Basis Of Race Or National Origin;**
2. **Linguistic Discrimination;**
3. **Racial Stereotypes;**
4. **Title VI Of The Civil Rights Act Of 1964**
5. **Violation Of Anti- Retaliation Clause; Of Title Vi Of The Civil Rights Act Of 1964**

112.    Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

113.    Defendants, all of them, individually and/or collectively, intentionally discriminated against Osei because of Osei's race (African) and national origin (Republic of Ghana) in the institution, investigation, prosecution and assessment and recommendation, imposition of sanctions in a student disciplinary proceedings and denied Osei the enjoyment of the rights, privileges and reasonable expectations of a student enrolled at UMUC because of Osei's race and national origin, as well as suspicion and mistrust of Osei's motivations based on false stereotypes concerning Osei's cultural and moral background and linguistic accent.

114.    Defendant Lindenmeier intentionally set up telephone appointment with Osei on March 3, 2015 and called Osei with a caller undisclosed ID and allegedly disdained and frowned and intimidated on Osei's voice and linguistics and in a follow up email to her (dated Wed, Mar 4, 2015 at 10:10 AM), Osei stated:

> You called and spoke with me yesterday March 3, 2014 on appointment through restricted anonymous call between 2:30—3pm.Typically, I do not answer such calls for records sake. At this point, I cannot speak with you by phone again, as my tone will change and I may vent my remonstrance on you, but these matters should be done in writing for record. Moreover, you did not have to call to tell me to tell me the same thing your subordinate Ms. Williams said, though I can appreciate your call and effort.

*See* also Ex. E.

Defendant Lindenmeier could not offer any shred of rebuttal against this assertion at the time.

115.    Osei perceived that defendant Lindenmeier called him also to hear his accent and determine who

Osei was in terms of race and national origin because such inferences can be drawn from

linguistic accents and by email( dated Tue, Mar 10, 2015 at 2:01 PM), Osei further wrote to def.

Lindenmeier

> It seems you have a lot of doubts about me and it appears to stem from stereotypes of black people which is unprofessional also because you claimed Ms. Marsh( a black woman) made an error attempting to move my summer funds, whereas Mr. Stever (a white man) did not make the same error moving funds from my summer. This so-called error has still not been addressed and they simply had to do a budget increase instead of moving my summer funds which you rightly noted to me on phone: "that summer is not here yet."

Def. Lindenmeier could not give any rebuttal or denial against this inferring that this was true.

116.    Plaintiff Osei was therefore discriminated by virtue of his linguistic accent by race and national

origin.

117.    By email (dated Wed, Mar 11, 2015 at 1:50 PM), Osei asserted to defendant Lindenmeier that

he would file a separate discrimination complaint to the Office of Civil Rights (OCR) of the

U.S Department of Education against her and will file federal suit against her. Osei later alerted

def. Patty about this assertion, however def. Patty did nothing to prevent such discrimination

but allowed the code process to go on despite the discriminatory shadow cast over the

proceedings and actions of def. Lindenmeier.

118.    Defendants knowing this upon Osei's allegation chose to ignore the alleged discrimination and

*Plaintiff's complaint*

supported defendant Lindenmeier in further adverse action though a discriminatory, retaliatory and prejudiced disciplinary hearing.

119.    Defendant Lindenmeier ridiculed, looked down, and intimidated the accent of Osei thereby discriminating Osei by race and national origin.

120.    Defendant Lindenmeier discriminated against Osei when she rebuked and asserted consequences against Ms. Latasha Marsh (black) of OSFA who considerably attempted to transfer funds for Osei but was cut off by def. Lindenemeier. Yet, Mr. Stever (a Caucasian male) of OSFA who had actually transferred funds for Osei in the OSFA was not spoken against or cut off (Ex. E), and Osei encountered hostilities, declines of funds, disparate demands of unpublished requirements, and stereotypical suspicions for extra scrutiny when def. Lindenmeier demanded more from Osei, and conducted other discriminatory acts for which cross-examination and trail of def. Lindenmenmeier by Osei in court might reveal.

121.    Defendant UMUC and the OSFA receives federal financial assistance, yet defendants engaged in intentional discrimination against Osei on the basis of Osei's race and/or national origin.

122.    WHEREFORE, plaintiff Michael Osei hereby demands judgment pursuant to 42 U.S.C. §§ 1983 and 1988 and other applicable federal and state statutes and applicable state common law against Defendants, jointly, severally and/or severally, against defendants in an amount in excess of **$10 MILLION**, exclusive of interest and costs; a preliminary and permanent injunction against Defendants to prevent further deprivation of Plaintiff's constitutional rights and the rights of other University students; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT V
### MICHAEL OSEI V. ALL DEFENDANTS
### LIBEL AND SLANDER, DEFAMATION, FALSE LIGHT

123.  Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

124.  At all times mentioned herein, Osei was a law abiding citizen of the Commonwealth of Pennsylvania and student at UMUC who enjoyed the respect, confidence and esteem of his neighbors, as well as of all others in the community, and has never been guilty of any crime, offense or violation of the law which would tend to lessen the respect, confidence and esteem which he has enjoyed, and to which he was entitled.

125.  Defendants, well knowing the facts set forth in the preceding paragraph concerning Osei's reputation in the community and with intent to injure Osei and bring him into public scandal and disgrace, knowingly and maliciously, or with reckless disregard for the truth or negligently and carelessly published or caused to be published the scandalous, defamatory, and libelous statements of and concerning Osei described hereinabove.

126.  The statements contained in the written communications identified and described above reflect upon Osei's conduct as well as his character and reputation and defendant Lindenmeier also described Osei as a columbine "risk" with an "ongoing behavior." (See Ex. C) Whereas Osei has no ongoing "behavior" but protected speech, whistle blowing, etc., and whereas Osei has no criminal convictions.

127.  Even if the defendants are privileged to defame by virtue of their capacities as school administrators, for the purposes good procedure and fair hearing, the defamatory *innuendo* cast a shadow upon the proceedings.

128.  Defendants knew or should have known that the statements contained in the written communications identified and described above were false when made, and Defendants

Page 33 of 46

*Plaintiff's complaint*

published them either intentionally and maliciously, or with reckless disregard for their truth or falsity, or negligently, and carelessly.

129.     The false and defamatory statements contained in the written communications identified and described above applied to Osei; were understood by the recipients of the statements to have a defamatory meaning; and were understood or reasonably understood by the recipients of the statements as intended to be applied to Osei.

130.     The publication of the false and defamatory statements contained in the written communications identified and described above and other similar false and defamatory statements of which Osei is not yet aware may have been and may continue to be republished, and Osei likewise demands presumed, compensatory, economic and punitive damages for the harm flowing from any and all such republications of the false and defamatory statements in addition to damages for the harm flowing from their initial publication.

131.     To the extent Defendants may attempt to assert in their own defense the privileged character of the occasion on which the false and defamatory statements were published, any such conditional privilege was abused by Defendants and thereby waived and forfeited.

132.     The aforementioned false and defamatory statements maliciously, intentionally, recklessly and falsely, by words, innuendo, inference and manner in which they were presented held Osei out to public scorn and ridicule and attributed improper conduct, including conduct of a criminal nature, to Osei.

133.     The aforementioned false and defamatory statements were in no manner privileged nor did the aforementioned article constitute fair comment on matters of public concern or interest.

134.     The aforementioned false and defamatory statements were published with knowledge that said statements, innuendo, inference and manner in which they were presented were false

and/or with reckless disregard for whether said material was false, said conduct constituting actual malice.

135.  The written communications were published in a negligent manner without adequately investigating the underlying facts.

136.  The statements and implications set forth above were false, and Defendants either knew or should have known at the time of publication that they were false.

137.  The statements and implications set forth above constitute defamatory publications which are actionable per se, are libels per se, and were published with actual malice.

138.  The above statements have severely injured and caused special harm to Osei in that they have tended to (a) blacken his reputation; (b) expose him to hatred, contempt, ridicule and humiliation; (c) ascribe to him characteristics incompatible with the proper conduct expected of a law abiding and trustworthy citizen; and (d) injure him in his ability to earn a livelihood.

139.  As a direct and proximate result of the intentional, malicious, reckless, negligent and/or careless statements and charges contained in the written communications identified and described above and their publication to third parties, Osei's reputation and esteem in the community have been adversely effected.

140.  As a further result of the aforementioned defamatory written communications: a) third persons have been deterred and would be deterred from associating with or otherwise doing business with Osei; Osei has been exposed to ridicule, hatred and contempt; Osei has sustained, and will sustain in the future, a loss of income and earning capacity. Osei has sustained grave mental anguish, humiliation and a loss of his enjoyment of life; and Osei has otherwise suffered in his business, reputation, feelings and peace of mind, to his great financial loss and damage.

141.  The conduct of Defendants in publishing the aforementioned false and defamatory statements was outrageous and Defendants acted in bad faith and/or with reckless disregard and

indifference to the truth and to the interests of Osei for which Osei claims an additional sum for punitive damages.

142.   Because of Defendants' malicious publication of the false and defamatory statements complained of herein, Osei is entitled to recover from Defendants such presumed, compensatory and economic damages in excess of $150,000.00 as will compensate him for his actual financial loss, injury to his personal and business reputation, and for mental anguish, suffering and severe emotional distress; and in addition, punitive damages which will punish Defendants for his malicious libels, and will deter him from repetition of similar libels in the future.

143.   Defendants gave publicity to a matter concerning Osei that is, made that matter public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge that placed Osei before the public in a false light.

144.   The false light in which Osei was placed would be highly offensive to a reasonable person in that it amounted to a major misrepresentation of Osei's character, history, activities or beliefs in a manner that could reasonably be expected to cause a reasonable man to take serious offense.

145.   Defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Osei would be placed.

146.   Defendants are therefore liable to Osei in damages for the tort of False Light.

WHEREFORE, plaintiff Michael Osei hereby demands judgment against Defendants, jointly, severally and/or severally, in an amount in excess of $150,000, exclusive of interest and costs; a preliminary and permanent injunction against Defendants to prevent further deprivation of Plaintiff's constitutional rights and the rights of other UMUC students; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other

and further relief as the Court may deem just and equitable.

# COUNT VII

## MICHAEL OSEI V. UMUC, COOPER, MIYARES,

1. **ERRONOUES DEPRIVATION OF CONTINUOUS EDUCATION;**
2. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**
3. **BREACH OF CONTRACT;**
4. **MISINFORMATION, MISINFORMATION BY OMMISION;**
5. **NEGLIGENCE; NEGELIGENCE OF DUTY**
6. **STATUTORY NEGLIGENCE;**
7. **ADMINISTRATIVE NEGLIGENCE**

147.    Plaintiff incorporates herein by reference each and every one of the allegations contained in

preceding paragraphs as though fully set forth at length herein.

148.    As a graduate student with GPA of about 3.5, Osei have a property interest in my continued

education undeterred which is constitutionally-protected by the Fourteenth Amendment to the

U.S. Constitution.

149.    An irreparable gap has been created erroneously in the continued education of Osei for the

entire Summer 2015 semester at UMUC as described in the following paragraphs by the

recklessness of defendants.

150.    In the Summer 2014 semester, although Osei enrolled in two (2) graduate classes namely:

PMAN 634 --Foundations of Project Management; and BIFS 613--Statistical Processes for

Biotechnology, the classes were forcibly dropped against Osei's authorization and will by

defendant Terrence Cooper given discrepancy with the prior Fall 2014 BIOT 630 class. As

such, an erroneous deprivation and a gap was created when the discrepancy was later

corrected whereas it was not Osei's fault:

151.    The *Incomplete (I)* grade for BIOT 630 was automatically turned to Fail (F) grade due to

        misinformation by the faculty and adviser at UMUC regarding the timing to submit an only

        remaining final exam otherwise Osei was in good standing with the class.

152.    By email (dated Thu, May 14, 2015 at 3:15 PM), Ms. Katelyn Bern of UMUC who works with

        defendant Cooper wrote:

> Dear Michael,
> This e-mail is to inform you that you have been dropped from the following course: - PMAN 634
> Please note that this action took place because you did not enroll into BIOT 630 which was required
> for you to take for academic standing purposes. In your next semester of enrollment, this course
> must be repeated and a grade of B or higher will have to be received in order to resume good
> academic standing.
> Please let me know if you have any further questions. Sincerely, Katelyn

153.    After failed attempts to resolve the discrepancy with the Biotechnology program department, by

        email (dated Thu, May 14, 2015 at 7:28 PM) attached as Ex. A, defendant Cooper informed Osei that

        all his Summer 2014 classes are forcibly dropped also because BIOT 630 is required for subsequent

        BIOT-designated classes.

154.    Defendant Cooper added in his email (dated Thu, May 14, 2015 at 7:28 PM) that "…Ms. Bern had

        the Registrar's office drop you from your PMAN 634 under my instruction." (Emphasis added).

155.    At the time, Osei was registered for PMAN 634—Foundations of Project Management-- which is not

        a BIOT-designated course, and PMAN did not require completion of all BIOT-designated courses.

        However, that class was also forcibly dropped as evidenced by the program's website:

        http://www.umuc.edu/academic-programs/masters-degrees/biotechnology-with-bioinformatics-

        specialization.cfm

156.    By email (dated Thu, May 14, 2015 at 5:48 PM), Osei informed defendant Cooper and Ms. Katelyn

        Bern the following:

> I informed you yesterday that a petition regarding BIOT 630 is pending before the
> University under the attention of Ms. Laurie Mabile, and Mr. Cooper is well aware
> of that. The petition places all registration matters on this on abeyance by given
> constitutional *due process of law.* I did not authorize for PMAN 634 to be dropped
> though I could drop by May 24, 2015. You did not cite any policy warranting that

you drop the class against my student authorization. Dropping the class is against
the ethics and precepts of advising…"

157.   Despite this assertion and caution, defendant Cooper ignored and dropped the classes thereby

preventing Osei's enrollment for the Summer 2015 term.

158.   By email (dated Fri, May 15, 2015 at 2:48 AM), Osei further explained and asserted to defendant

Cooper as follows:

> …Regardless of Ms. Bern's position as *manager* or *adviser*, I have raised objection to her handling
> of my academic matters and I am no longer comfortable with her working with me. That must be
> respected as a matter of law to avoid systemic biases and hostile educational environment.
> Understand that if a student indicates that they are not comfortable working with someone, that
> person must recuse from further rendition of services to the student. That is principle.
>
> Accordingly, I, the student, is no longer comfortable with Ms. Bern handling or engaging in my
> academic matters and she must heretofore desist from further handling of my issues to protect
> student interest, fiduciary duty, due process, and integrity of rendition of services, in any position
> she occupies whatsoever-- manager or adviser.
>
> Apart from that, Dr. Corker, etc., are not the final decision makers in this university when a student
> submits an academic petition or grievance for review. I have a protected right under the U.S.
> Constitution's Fourteenth Amendment's *Procedural Due Process of Law* for timely redress of such
> petition and I have timely submitted my petition and requested for expedited decision given
> timelines to avoid *erroneous decision* and *erroneous deprivation of continued education* that will
> cause undue irreparable harm or injury.
>
> By submitting the petition over BIOT 630, that places all actions on abeyance and you have
> illegally disregarded that to drop me from a PMAN class involuntarily, without waiting for decision
> on the petition, whereas I still have up to May 24, 2015 to drop on my own.
>
> Consequently, please be reminded that federal courts have recognized that deprivation of continued
> education produces "irreparable harm and establishes a need for prompt and immediate relief." See,
> *L.R. v. Steelton-Highspire Sch. Dist.*, No. 1:10-CV-00468, 2010 WL 1433146 at *3 (M.D. Pa. Apr.
> 7, 2010) (citing *Oravtez v. W. Allegheny Sch. Dist.*, 74 Pa. D. & C.2d 733, 737-38 (Pa. Ct. Com. Pl.
> 1975)).
>
> Parenthetically, if you have read my BIOT 630 petition I copied you on, at issue in that petition is
> the fact that the university officials, including the same Dr. Corker you mention, demonstrated
> *negligence of duty* for their failure to properly inform me about the deadline on the incomplete
> grade. It was their responsibility to have told me the deadline *aforehand*, at the time the incomplete
> was awarded, and *not later on* when the damage has been caused.
>
> This constitutes *misinformation* to my *detrimental reliance*, under the law. Understand that if a
> Doctor, for example, does not tell you how to use a medication for your eye, and then you go an
> swallow the medication and it harms you, the doctor is responsible and can be sued, not the patient.
> The same principle holds when a teacher or director or university fails to advise a student about an
> applicable deadline until the damage is caused. Accordingly, I am not the one to be blamed for that
> missed deadline whereas nobody told me at the time, and it should not impede my continued
> education in any way shape or form.

What is more, the issues regarding BIOT 630 does not warrant you from dropping me from PMAN 634. Note that BIOT 630 is a pre requisite for subsequent BIFS designated courses but not PMAN 634. Hence, I need not repeat BIOT 630 to take PMAN 634. Perhaps your action dropping the PMAN 634 would be legitimate if you dropped me from BIFS 613 instead since that requires BIOT 630.

However, in this case, PMAN 634 is not a BIFS class and does not require BIOT 630. Indeed, there is written policy that all BIOT-designated courses should be taken before BIFS designated courses. However, there is absolutely no written policy whatsoever that BIOT designated courses should be taken prior to PMAN 634, and you did not cite any policy to me on that. As a University, all such matters should be guided by written procedure and policies and failure to cite such policy leaves room for me to attribute it to bias, prejudice, and bad- faith—all of which are illegal.

Again, please note that this unauthorized drop from PMAN 634 creates a gap in my continued education as a right and that is illegal and I may have to seek legal redress for that. Further note as a matter of law that "[a]bsence from school cannot be repaired by money damages or even by a subsequent reinstatement at a future period." See *Minnicks v. McKeesport Area Sch. Dist.*, 74 Pa. D. & C.2d 744, 749-50 (1975).

The appeal for BIOT 630 is ongoing and that should place dropping my classes on abeyance. However, Mr. Cooper would not listen and so all summer 2014 classes were forcibly dropped creating a gap in my continued enrollment for the summer 2014 semester.

Despite placing on notice about the reckless and negligent action and what it will cause, def.

Cooper failed do anything to restore Osei's status immediately.

159.    The Defendants, the University, def. Cooper, the President, by forcibly dropping Osei's classes in

summer 2015 within the time period of his educational contract with the University, have without

just cause, breached this contract.

160.    By email (dated Mon, Jun 1, 2015 at 5:50 PM), Osei eventually appealed to Marie Cini, PhD, the

UMUC Provost for Academic Affairs, about the BIOT 630 discrepancy alleging various UMUC

policy violations and reckless disregard to University policies by faculty, staff, and academic advisers

including UMUC policies 130.70 *et seq* and 210.11 *et seq* for Misrepresentation and Misinformation-

by-Omission by University staff, faculty, and advisers; Policy 210.11 by the Faculty, Program

Director, and academic advisers. *See,* http://www.umuc.edu/policies/academicpolicies/aa13070.cfm

**Policy 210.11 (II) (e)**

"Substantial misrepresentation: Any misrepresentation on which the person to whom it was made could reasonably be expected to rely, or has reasonably relied, to that person's detriment."

**Policy 210 (III) Disciplinary Action:**

"Any UMUC employee who violates this policy may be subject to disciplinary action up to and including termination."

**Policy 120.10 - Academic Advising** also provide

"Board of Regents Policy III-2.50 Policy on Academic Advising"

161. Osei named as respondents: 1) Kory Johnson, PhD; faculty or instructor for BIOT 630 class, Fall 2014, 2) James Corker, PhD; Program Director, Bioinformatics 3) Laurie Mabile; Director for Graduate Student Relations, 4) Terrence Cooper; Academic Specialist III, and 5) Katlyn Bern; Academic Adviser

162. After a required 40-day wait period, by phone and email (dated Thu, Jul 9, 2015 at 11:18 AM), Mr. Harold Pittenger, Director of Academic Resources and Services, informed Osei that the Provost Dr. Cini has a) reviewed his appeal; b) concurs with Osei on the misinformation that the faculty should have duly and properly informed him about the March 30, 2015 deadline to submit the remaining final exam upon the Incomplete grade; and c) has therefore granted and authorized the one-week time requested by Osei to submit the final exam for a change of the BIOT 630 grade.

163. By email (dated Thu, Jul 9, 2015 at 1:11 PM), James Coker, Ph.D, Program Chair, Bioinformatics wrote in compliance to the Provost's decision to collaborate with Osei to submit the final exam for a grade change.

164. Subsequently, Osei submitted the BIOT 630 final exam and passed the course and so the initial final grade of Incomplete ( "I") grade that had changed to Fail ("F") was finally changed to "B" as confirmed by Dr. Corker by email (dated Mon, Jul 20, 2015 at 9:18 AM) and reported to the UMUC Registrar.

165. Although Osei's status *quo* is now restored academically from the Fall 2014 and in good academic standing with cumulative graduate GPA of 3.5, an irreparable gap, injury and harm is

*Plaintiff's complaint*

still created against Osei's continued education Osei cautioned defendant Copper about from dropping his Summer 2014 classes against his will is still caused which erroneously deprived Osei's constitutionally- protected right to his continued enrollment and education.

166.  By their extreme and outrageous conduct, which was intentional or reckless in character, Defendants have caused and continue to cause Osei to suffer extreme emotional and physical distress even with the gap created in his continued education by erroneous deprivation thereof. Defendants are therefore liable to Osei in damages for the tort of intentional infliction of emotional distress.

167.  The defendants by misinforming Osei and also forcibly dropping Osei from his Summer classes despite the reckless disregard and error on their part, defendants are liable for administrative and statutory negligence because they failed to comply with their own well-established UMUC polies and what other educational administrative bodies have promulgated generally- applicable rules for all their employees to comply with to protect students' interest and avoid erroneous deprivation of education to Osei.

168.  Defendants, all of them are cooperatively liable and culpable for statutory negligence, negligence to *duty of care* and negligence by omission and commission, misinformation and misrepresentation all to the detriment of Osei.

169.  By forcibly dropping his Summer 2015 classes against the authorization and will of Student Osei and the interests of Osei despite the error that was corrected later on thereby creating an *irreparable gap* in his continued education, defendants Cooper, Mayires, and UMUC are liable for Tortious Interference with advantageous relationship in the form of Osei's continuous enrollment in classes for the Summer 2015 at UMUC and Tortious Interference with Prospective advantageous relationship in the form of timely future enrollments in doctorate or other professional degree programs, as well as timely biotechnology employment relationship with

various biotech employers.

170.   Osei contracted with Defendants generally and especially contracted through enrollment in

BIOT 630 that in exchange for meeting the duties of the contract, including the payment of

tuition, Defendants would provide plaintiff with a continued education satisfying the

requirements for a Master's Degree program in biotechnology. Osei met all of the duties of the

contract, including the payment of the required tuition so as to continue his enrollment

undeterred for the summer 2015 term as well undeterred.

171.   Defendants breached a duty imposed by the contract by failing to provide Osei with accurate

information and accurate deadlines towards BIOT 630 and the promised education and degree,

and consequently dropped Osei's classes for the Summer 2015 term against his will thereby

creating an irreparable gap in his continued education when the error was later corrected by

defendants' Provost Cini when the Summer enrollment and classes was already done.

Defendants are therefore liable to Osei in damages for breach of contract and detrimental

reliance

172.   As a direct and proximate result of Defendants' unlawful conduct as described herein, Osei will

suffer and will continue to suffer, irreparable injury which cannot be fully compensated by an

award of monetary damages for which Osei is entitled to preliminary and permanent injunctive

relief as well as damages in an amount to be determined by the Court and reasonable costs of

this lawsuit, including reasonable attorneys' fees.

173.   As a further direct and proximate result of Defendants' unlawful conduct as described herein,

Osei will be deprived and is deprived of his constitutional rights and has otherwise sustained

legal injury, including, but not limited to:

(c)     the cost of tuition, student loans, and other costs and expenses associated

with applying for and attending school; and

(d)     lost wages in the form of future earnings, the value of lost future benefits

(including, but not limited to, health, pension, profit sharing, and other earnings-type benefits)

that Osei would have received had Osei not been unlawfully suspended and thereby deprived

of future educational and professional opportunities

174.    As a further direct and proximate result of Defendants' unlawful conduct as described herein,

Osei is being caused and was caused to suffer other, non-economic losses, all to Osei's great

financial, psychological, and emotional detriment and loss, including, but not limited to, loss of:

(f)     the diminished likelihood that he will be able to further his education, which has

at all times has been his primarily objective; school program;

(g)     the opportunity to study for higher doctorate degrees

(h)     the honor and prestige of being a biotechnology professional;

(i)     the future ability to return to Ghana and help its citizens as a trained

professional and to participate in economic development

(j)     the feeling of self-worth that comes with serving an important societal

purpose, the health and welfare of others.

175.    As a further direct and proximate result of Defendants' unlawful conduct as described herein,

Osei has been caused and will continue indefinitely into the future to be caused severe

mental anguish, humiliation, anxiety, stress, and emotional and/or psychological distress, all

with associated physical symptoms.

WHEREFORE, plaintiff Michael Osei hereby demands judgment against Defendants for

**$50 Million** for the erroneous and irreparable deprivation of his Summer 2015 term continued

education--perhaps an paragon of atrocious act, and other applicable torts, federal, and state

laws, exclusive of interest and costs; a preliminary and permanent injunction against

Defendants to prevent further deprivation of Plaintiff's constitutional rights and the rights of

other students; an award of reasonable attorneys' fees, costs and other costs and disbursements

in this action; and such other and further relief as the Court may deem just and equitable.

## RELIEF REQUESTED

Immediate preliminary, special, TRO and *Ultra Vires* injunctions against defendants' ongoing

retaliations; and /or to stay all statutory, unconstitutional, retaliatory, and procedural disciplinary

proceedings, as stated under each and every count to make permanent after hearing, trial, etc.

against defendants.

The injunctions should be retroactive, stayed and continuing effective.

All applicable damages and other damages, penalties, and monetary damages as
articulated under each Count.

The PPA agreement UMUC breached should be stricken by this Court and enjoin the

United States to enforce all subsequent PPA s on defendants, post whistle blower notices. An

order or injunction preventing defendants from any further prosecution of the matter effective the

date of this suit lawsuit.

Injunction against defendants from violating the civil rights of Osei.

**NB:** Motion and Memo of law will be filed soon.

## JURY TRIAL DEMANDED

Plaintiff Michael Osei hereby demands a jury trial with respect to all claims.

Respectfully submitted,

Dated Monday, July 27, 2015

MICHAEL OSEI, pro se
3016 North Broad Street,
Philadelphia, PA 19132

## CERTIFICATE OF SERVICE

I, Michael Osei, hereby certify that on this July 27, 2015, I filed with this court and caused a true

and correct copy of the foregoing: *Complaint* to be delivered this same day to defendants' emails

and will hereto fore serve the summons with hardcopies through a process servicer, and thereafter

send all defendants email courtesy copies.

Respectfully Submitted,

-----------/s/----------------------

MICHAEL OSEI, pro se
3016 North Broad Street,
Philadelphia, PA 19132

Dated Monday, July 27, 2015